**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

DANIEL ALONZO MYERS,

Plaintiff,

v.

ROBERT ADAMS, WARDEN JENKINS C.F., SHERHONDA BOATWRIGHT, CHIEF COUNSELOR, and CORRECTIONAL OFFICER GASKIN,

Defendants.

CIVIL ACTION NO.: 6:25-cv-2

## REPORT AND RECOMMENDATION

Defendants filed a Motion to Dismiss Plaintiff's Complaint. Doc. 20. Plaintiff filed a Response. Doc. 21. Defendants filed a Reply. Doc. 22. Plaintiff filed a Surreply. Doc. 23. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, **DIRECT** the Clerk of Court to enter appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Plaintiff leave to appeal *in forma pauperis*.

## BACKGROUND

Plaintiff filed this action, asserting claims under 42 U.S.C. § 1983 relating to events occurring in 2023 at Jenkins Correctional Facility ("Jenkins"). Doc. 1. Plaintiff alleges that he suffers from petit-mal seizures and he had a medically assigned bottom bunk. Id. at 3. In "mid-March of 2023," Defendants moved Plaintiff to a top bunk under threat of placement in administrative segregation. Id. at 4. Plaintiff spoke with Warden Adams and other staff "several times during inspection and was told you'll be alright." Id. On August 29, 2023, Plaintiff had a

seizure and fell from the top bunk, resulting in a spinal injury that required emergency treatment at an Augusta hospital. Id.

On September 12, 2023, Plaintiff was transferred to Wheeler Correctional Facility ("Wheeler"). Doc. 21 at 3. There, Plaintiff alleges that he was held in a medical holding cell for four-and-a-half months while he underwent physical therapy. Id. at 2. During this period, Plaintiff could not hold a pen, access the law library, or meet with counselors. On January 17, 2024, two days after leaving the medical holding cell, Plaintiff filed a grievance. Id. at 1–2. The grievance was returned to Plaintiff on March 12, 2024, and was denied for being out of time. Id. at 2. On March 15, 2024, Plaintiff alleges that he appealed the denial of his grievance, and this appeal was then also denied as untimely. Id.

Defendants filed a Motion to Dismiss, arguing that Plaintiff failed to exhaust available administrative remedies.[1] Doc. 20. Defendants argue that Plaintiff filed an untimely grievance and failed to seek leave for good cause to do so. Id. at 6–7. Defendants also argue that Plaintiff failed to file a Central Office Appeal of the rejection of his grievance. Id. at 8.

Plaintiff filed a Response and Surreply to Defendants' Motion. Plaintiff states that staff at Jenkins or Wheeler "never explained [the grievance procedure] to him either orally or in an inmate orientation handbook." Doc. 21 at 3. Plaintiff states that he only knew of the grievance procedure through "word of mouth through other inmates[.]" Doc 23 at 2. Plaintiff states that he had no way of learning about the grievance process while he was in the medical holding cell after he was injured. Id. at 2. Plaintiff also states that he did not receive timely responses to his

---

[1] In the Motion to Dismiss, Defendants suggest that the Motion is brought on behalf of a "Defendant Vinson" in addition to Defendants Adams, Boatwright, and Gaskin. Doc. 20 at 8. Plaintiff states that "Defendant Vinson is not listed in any way in these proceeding[s.]" Doc. 21 at 3. Plaintiff is correct. Plaintiff did not bring any claims against Vinson. Doc. 1. It appears that the single mention of Vinson in the Motion to Dismiss was a typographical error.

grievances. Doc. 21 at 2. Plaintiff also states that staff at Wheeler failed to follow the grievance procedures because they did not process his grievances. Id. at 2. Finally, Plaintiff alleges that he filed a Central Office Appeal on March 15, 2024, and then received a decision from Central Office on November 19, 2024. Id.

## DISCUSSION

### I. Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 578 U.S. 632, 639 (2016) (finding that the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief

administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies before bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford v. Ngo, 548 U.S. 81, 91–92 (2006); Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000))). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after suing. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than just initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga.

Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden about his grievance is still in the process of exhausting his administrative remedies).

While exhaustion is a mandatory requirement for suing, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'" (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007)). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 642. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, prisoners need not exhaust administrative remedies when the required procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 642. Finally, "when prison

administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates need not exhaust administrative remedies. Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche v. Brown, 783 F.3d 1204, 1214 (11th Cir. 2015) ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner v. Burnside, 541 F.3d 1077, 1083 (11th Cir. 2008))); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

## II. Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA[.]"); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner, 541 F.3d at 1082); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752 (11th Cir. 2018); White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche, 783 F.3d at 1210; Turner, 541 F.3d at 1082.

In Turner v. Burnside, the Eleventh Circuit Court of Appeals laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact

about the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1209 (11th Cir. 2015)); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 202 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008)); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record."). However, if the issue of exhaustion is "intertwined with the merits of a claim protected by the Seventh Amendment," parties are entitled to a jury trial on that issue and dismissal is not appropriate." Perttu v. Richards, 605 U.S. 460, 479 (2025).

## III. Applying Turner

### A. The Georgia Department of Corrections' ("GDC") Administrative Remedies

Jenkins and Wheeler use the GDC procedure for prisoner grievances. Doc. 20 at 1. The GDC's grievance procedure is set out in Standard Operating Procedure ("SOP") 227.02. Id.

Under SOP 227.02, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" that "personally affects the offender." Doc. 20-1 at 8. The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Id. at 12. Inmates must generally file original grievances within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance. Id. The SOP also contains provisions that allow inmates to file untimely grievances. Specifically, a grievance coordinator "may waive the [10-day] time limit" after an inmate shows good cause. Id. at 12–13. The SOP defines "good cause" as a "legitimate reason involving unusual circumstances that prevented the [inmate] from timely filing a grievance," such as "serious illness." Id. at 6. The Warden has 40 calendar days to respond to a grievance. Id. at 15.

Then, the inmate can appeal the Warden's response to the GDC Central Office: (1) after the inmate receives the Warden's decision on the grievance; or (2) after the time allotted for the Warden to decide has expired. Id. at 18. An inmate has seven days from the date of the Warden's response (or expiration of the response time) to file the Central Office Appeal. Id. The GDC Commissioner then has 120 days to respond to the Central Office Appeal. Id. at 19. Only then is the grievance procedure complete. Id.

**B. Plaintiff Did Not Exhaust Available Administrative Remedies**

***1. Plaintiff's claims survive under Turner step one.***

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82. To give Plaintiff the full benefit of the Turner approach, the Court considers Plaintiff's factual allegations in his Complaint, too. See, e.g., McKenzie v. Staten, No. 6:17-CV-83, 2020 WL 5638621, at *10 (S.D. Ga. Sep. 3, 2020), report and recommendation adopted, 2020 WL 5637085 (S.D. Ga. Sep. 21, 2014) (considering allegations in the plaintiff's complaint at Turner step one).

Defendants contend that Plaintiff filed an untimely grievance. Doc. 20 at 6. Defendants state the grievance policy "was available to Plaintiff at all times prior to the filing of his lawsuit." Doc. 22 at 2. Defendants state that staff at Wheeler told Plaintiff about the grievance procedure and provided him a copy of the inmate handbook containing the procedure in 2016. Id. Defendants state that Plaintiff "failed to seek leave for good cause before filing the untimely grievance, nor did he argue in his grievance that he was entitled by a good cause waiver to file the untimely grievance." Doc. 20 at 7. Defendants also state that Plaintiff failed to file a Central Office Appeal. Id. at 8.

Plaintiff states that he was unable to file a timely grievance and did not know he needed to seek a good cause waiver. Doc. 21 at 1, 3. Plaintiff states that staff at Wheeler never informed him of the grievance procedure. Doc. 23 at 2. Plaintiff states that, after being transferred to Wheeler, he was in a medical holding cell for four-and-a-half months, doc. 21 at 2, and he lacked access to the law library and counselors during this period. Doc. 23 at 2. Plaintiff states that he knew of a grievance procedure through "word of mouth through other inmates" and

that he had "knowledge of a grievance process while at Jenkins" before he was injured. Id. Plaintiff also alleges that he filed a Central Office Appeal on March 15, 2024, and then received a decision from the Central Office on November 19, 2024. Doc. 21 at 2.

The parties' factual allegations conflict as to the availability of the grievance procedure and whether Plaintiff filed a Central Office Appeal. Defendants allege the grievance policy "was available to Plaintiff at all times prior to the filing of his lawsuit," doc. 22 at 2, and Plaintiff alleges that he could not discover requirements for remedies while he was housed in the medical holding cell. Doc. 23 at 2–3. The parties also dispute whether staff at Wheeler told Plaintiff about the grievance procedure or gave him a copy of the inmate handbook containing the procedure in 2016. Compare Doc. 22 at 2 with Doc. 23 at 1–2. Finally, the parties dispute whether Plaintiff filed a Central Office Appeal. Compare Doc. 20 at 8 with Doc. 21 at 2. Thus, the question becomes whether dismissal is warranted even taking Plaintiff's version of the facts as true.

The parties do not dispute that Plaintiff failed to file timely grievances in accordance with SOP 227.02, but Plaintiff invokes the unavailability of the SOP as the reason he did not properly exhaust administrative remedies. Doc. 21 at 2. This notion falls under the second circumstance described in Ross. Under this circumstance, a plaintiff need not properly exhaust when an administrative procedure is "so . . . unknowable" that "no ordinary prisoner can discern or navigate it." 578 U.S. at 644. This is the case when "an inmate does not know about, and cannot discover through reasonable effort," remedies or requirements for remedies "by the time they are needed." Goebert v. Lee County, 510 F.3d 1312, 1322 (11th Cir. 2007).

Looking solely at Plaintiff's Response, his allegations are sufficient to survive a motion to dismiss for failure to exhaust his administrative remedies under Turner step one. Plaintiff

states that he did not know about the good cause requirement and could not, through reasonable effort, learn about it by the time he filed his grievance. Thus, administrative remedies were unavailable to him.

### *2. Plaintiff's claims should be dismissed under Turner step two.*

The parties' filings present two factual questions under Turner step two. Specifically, the Court must determine if administrative remedies were available to Plaintiff and whether Plaintiff filed a Central Office Appeal.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts." Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sep. 4, 2008). Nevertheless, a presiding judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies. Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)). Similarly, the Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment. Womack, 2008 WL 4104148, at *5 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

Failure to exhaust is an affirmative defense that, like other affirmative defenses, puts the burden of proof on defendants. See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding that "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where

plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial). Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'" Womack, 2008 WL 4104148, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record[.]"); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue"). Here, both parties have submitted argument or evidence on the issue of exhaustion and the availability of the grievance process. Thus, the parties have had a sufficient opportunity to develop the record.

Defendants have carried their burden to show that the grievance procedure (including the good cause requirement) was available to Plaintiff. Defendants submitted Wheeler Grievance Coordinator LaJuanna Johnson's sworn testimony. Doc. 22-1. Ms. Johnson declares that inmates have access to the grievance procedure in Wheeler's law library and that her review of Plaintiff's institutional file revealed that admission and orientation staff recorded that Plaintiff "was given an overview of the rules, regulations, and programs . . . and an inmate handbook" when he arrived at Wheeler in 2016. Id. at 2. This testimony shows that the grievance procedure—including the good cause requirement—was knowable to Plaintiff.

This evidence is persuasive. Plaintiff states that prison staff never gave him the inmate handbook or explained the grievance procedure to him. Doc. 23 at 1–2. But Plaintiff did not submit any evidence to support these unsworn statements. See Womack, 2008 WL 4104148, at *7 ("Plaintiff cannot show that administrative remedies were unavailable simply by making a blanket allegation without any supporting evidence."). Because Defendants have shown that Plaintiff did not seek a good-cause waiver for his untimely grievance, despite the requirement to do so being knowable, Plaintiff failed to meet his burden of showing that administrative remedies were unavailable.

The record also shows that Plaintiff failed to file a Central Office Appeal of his grievance. Ms. Johnson states in her Declaration that Plaintiff did not appeal his grievance. Doc. 22-1 at 6. Although Plaintiff alleged that he had a receipt for a Central Office Appeal "in [his] possession," Plaintiff did not submit any copies of these records. Doc. 21 at 2. Thus, Plaintiff has provided no evidence that shows that he completed the grievance process before filing his Complaint. Therefore, I conclude that Plaintiff failed to exhaust his administrative remedies under Turner step two. The Court should **GRANT** Defendants' Motion and **DISMISS without prejudice** Plaintiff's Complaint.

## IV. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3);

Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, **DIRECT** the Clerk of Court to enter appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v.

Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 24th day of August, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA